

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 21, 2013

<u>By Facsimile</u>
The Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     <u>United States v. Glafira Rosales</u>
                13 Mag. 1324

Dear Judge Netburn:

The Government respectfully submits this letter in support of its application for Glafira Glafira Rosales's detention because Rosales posses a substantial risk of flight and no condition or combination of conditions will reasonably assure her appearance in court.

As set forth in detail below, the risk of flight is substantial because:

(1)     Rosales has access to substantial assets in bank accounts overseas in both her name and the name of family members;

(2)     Rosales is citizen of Mexico and the United States with an extensive history of international travel and roots overseas;

(3)     Rosales's ties to the community are weak and can be easily severed;

(4)     her incentive to flee is high because the case against her is overwhelming, and a subsequent prosecution for making false representations in connection with the sale of tens of millions of dollars of art is likely; and

(5)     Rosales has failed to permit the Pretrial Services Office to corroborate statements made by her and has chosen not to provide information about, among other things, her income.

In addition, there is no condition or combination of conditions that will reasonably assure Rosales's appearance in court.   Rosales's assets are criminal proceeds that which cannot be used to secure her bond, but even if they could be posted as her bond, they would provide inadequate security because the likely back taxes that would be paid as restitution, together with interest and

The Honorable Sarah Netburn
May 21, 2013

penalties imposed by the Internal Revenue Service (the "IRS"), interest, and penalties due from the offenses exceeds the value of Rosales's assets. Finally, home confinement and/or electronic monitoring are inadequate because they do not prevent flight.

## Legal Standard

The Bail Reform Act requires this Court to detain Rosales if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." 18 U.S.C. § 3142(e)(1). The Government must prove that the defendant is a flight risk by a preponderance of the evidence. *See*, *e.g.*, *United States* v. *Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). In assessing whether there are conditions of release that will reasonably assure Rosales's appearance, this Court must consider several factors, including: the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; and the history and characteristics of the defendant, such as the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. *See* 18 U.S.C. § 3142(g).

## The Risk of Flight Is Very High

The risk that Rosales would flee the United States to avoid prosecution is very high, for several reasons.

*First*, Rosales has the means to flee and to live comfortably overseas with the two most important people in her life, her daughter and boyfriend. As set forth in the Complaint, Rosales likely has access to substantial funds overseas in at least three overseas bank accounts that Rosales, Rosales's daughter, her boyfriend, and/or her boyfriend's brother control. (*See* Compl. ¶ 10). Rosales's incentive to flee is especially great because her longtime boyfriend and her daughter are both citizens of Spain, which will allow all of them to relocate to Spain, for example. (Ex. A, Passports). Rosales's travel records also show that she has roots overseas which would make her decision to flee easier. Rosales has flown from the United States: to Spain six times since 2010; to and from Mexico four times since 2011; and twice to and from London in 2010 and 2012. Travel records for Rosales's boyfriend, Jose Carlos Bergantiños Diaz, also show extensive international travel, mostly to the Dominican Republic and Spain, but also to Mexico, Italy, and Canada. Rosales's access to substantial funds in foreign banks, and her increasingly frequent travel to Spain where her boyfriend and daughter are citizens, pose a substantial risk that Rosales will flee if not detained. *See United States v. Khraizat*, 238 F.3d 425, 2000 WL 1769637, at * 2 (6th Cir. Nov. 17, 2000) (unpublished opinion) (detention supported by evidence that defendant had family ties overseas and access to overseas funds); *United States v. Conover*, Mag. No. 12-2080 (JS), 2012 WL 4846132, at *8 (D.N.J. Oct. 10, 2012) (defendant with "international travel experience, . . . access to liquid assets, and . . . computer expertise" was an "enormous" flight risk).

The Honorable Sarah Netburn
May 21, 2013

*Second*, Rosales is a citizen of the United States and Mexico, which affords Rosales the opportunity to flee to Mexico if she is granted bail.  Although Rosales would have to surrender her passports if granted bail, Rosales could easily obtain a new passport from the Mexican consulate in New York while on bail.  And Rosales could gain entry into Mexico (with or without a passport) any number of ways since the U.S.-Mexico border is notoriously porous.  Once in Mexico, Rosales can evade law enforcement by staying in Mexico or traveling to any number of other foreign countries, such as Spain or the Dominican Republic, where Rosales's family has maintained ties.

*Third*, Rosales's ties to the community are weak and can be easily severed.  Rosales's primary ties to the community, or even just the United States, are her residence in Sands Point, New York, her daughter, and her profession as an art dealer.  Those connections, however, are tenuous and can be easily abandoned to avoid prosecution.  For example, Rosales's home has been for sale for at least two years, which suggests that Rosales is contemplating leaving Long Island, and possibly the United States.  (Ex. B, Listing for Rosales's Residence).  Rosales would also readily abandon her home, even though it is likely worth more than $2 million and she has substantial equity in it, because the probable restitution generated by a conviction of the charges in the Complaint and the civil liability for penalties and interest would likely far exceed the market value of Rosales's home.[1]  In other words, the decision to flee and abandon her home would be an easy one because the financial penalties associated with a conviction would likely exceed the market value of Rosales's home which makes flight a cost-effective choice.

Rosales's closest community ties, her daughter and her boyfriend, also have loose ties to the United States.  Rosales's daughter, Isolina,  is 22 years old and a citizen of Spain.  Isolina resides in New York, but her roots in the United States do not run deep.  For example, Isolina is only 22 years old and does not appear to be married or to have children in the United States.  In the event that Rosales flees while on bail, Isolina will be able to reunite or relocate with Rosales overseas, in part, because she appears to be a professional musician with highly portable career prospects.  Jose Carlos Bergantiños Diaz ("Bergantiños"), Rosales's longtime boyfriend, is also a Spanish citizen with access to funds overseas.   Although the defendant claimed to the Pretrial Services Office that Bergantiños lived with her in Sands Point, a check by the Government of his travel confirms that he frequently travels to Spain and the Dominican Republic, two places that the defendant frequently calls by telephone.

Rosales would also readily abandon her career as an art dealer in New York if given the

---

[1] One of the civil penalties for willful failure to file an FBAR, the crime charged in Counts Four through Eight of the Complaint, is a fine of 50% of the highest balance in the undisclosed account.  *See* 31 U.S.C. § 5321(a)(5)(C)(i)(II).

3

The Honorable Sarah Netburn
May 21, 2013

opportunity.  As set forth in the Complaint, Rosales derived massive amounts of income from selling 63 paintings to Gallery 1 and Gallery 2.  Rosales has also been named as a defendant in several civil suits in which it is alleged that the paintings that she sold are fakes.  Many of those sales have become subject of several international news stories in publications like *The New York Times*, *The Wall Street Journal*, and *Vanity Fair*, among others.  The negative publicity generated by the lawsuits and subsequent press coverage have effectively ended Rosales's career as a dealer of high-end art.  With Rosales's career prospects damaged by those lawsuits and her arrest, there is no professional reason for her to stay in the United States, a fact that makes it more likely that she would flee from justice.  *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) (defendant detained as a flight risk because of substantial foreign contacts, absence of substantial ties to his community, and his employment history); *United States v. Quartermaine*, 913 F.2d 910, 916-17 (11th Cir. 1990) (defendant was a serious flight risk because he had access to considerable funds outside the United States, stated that Honduras was his country, and had business ties to Panama and Colombia); *United States v. Cashin*, 739 F. Supp. 1107, 1112 (E.D. Mich. 1990) (lack of professional or financial ties to the community other than illegal activities suggested defendant was a flight risk).

*Fourth*, and finally, Rosales has a strong incentive to flee because the tax charges against her are overwhelming and her possible sentence is substantial.  As set forth in the Complaint, Rosales unlawfully failed to report, and hid from the IRS, the existence of a foreign bank account that received at least $12.5 million of unreported income.  Separate and apart from the tax charges, Rosales is also likely to be charged with falsely representing to Gallery 1 and Gallery 2 that the artworks that she sought to sell were lost treasures by the hand of famous artists and were acquired by the Purported Swiss Client and the Purported Spanish Collector.  If convicted of just the tax counts in the Complaint, a preliminary calculation of the Sentencing Guidelines range results in a recommended sentence of 63 to 78 months' imprisonment and a recommended sentence of 46 to 57 months' imprisonment after a guilty plea.[2]  In sum, the case against Rosales is overwhelming, as set forth in the Complaint, and she faces a lengthy prison term if convicted and millions of dollars in back taxes due, interest, and penalties.  Rosales thus has a very strong incentive to flee the country if released on bail.

### No Bail Condition or Combination of Bail Conditions Is Sufficient

---

[2] Pursuant to U.S.S.G. § 2T1.1(c)(1)(A), these calculations are based on a tax loss of $3.5 million, which is 28% of the unreported gross income.  A tax loss of $3.5 million produces an offense level of 24 (U.S.S.G. § 2T4.1(J)), to which two levels are added for an offense involving sophisticated means, pursuant to U.S.S.G. § 2T1.1(b)(2), which produces an Offense Level of 26.  At Criminal History Category I and Offense Level 26, the Guidelines recommend 63 to 78 months' imprisonment.  In the event of a plea, the Offense Level drops to 23 and the Guidelines recommend 46 to 47 months' imprisonment.

The Honorable Sarah Netburn
May 21, 2013

In light of Rosales's powerful incentives and the means to flee, there is no condition or combination of conditions that could reasonably assure her presence in court. Any security or bond is insufficient for two reasons.

*First*, all or nearly all of Rosales's income came from the sale of the paintings to Gallery 1 and Gallery 2. Those assets are criminal proceeds that cannot be posted as security for Rosales's bond.[3] Additionally, Rosales's most significant asset in the United States is her residence, but that asset is not enough to assure her presence in court. If convicted, Rosales will owe millions of dollars in back taxes, interest, and penalties which will dwarf the value of Rosales's home. Rosales is also a defendant in several lawsuits relating to the sale of the paintings discussed in the Complaint. Rosales is likely to face millions of dollars in judgments stemming from those proceedings. When faced with the specter of owing millions of dollars to the IRS and millions more in civil judgments, Rosales's home is insufficient to secure any bond.

*Second*, Rosales's access to substantial funds overseas which Rosales could use to live off of after fleeing. Likewise, Rosales could flee the United States and use those overseas funds to compensate any co-signor who agreed to sign a bond on her behalf. Rosales is like the defendant in *United States v. Ervin*. In that case, the court considered Ervin's proposal to have his mother, son, and daughter post property for security for his bond and to subject Ervin to electronic monitoring. 818 F. Supp. 2d 1314 (M.D. Ala. 2011). The court rejected the proposal and detained Ervin because Ervin had concealed substantial assets in the past and there was "a strong likelihood that he would simply use these finances to reimburse his relatives for any loss after fleeing from the country." *Id.* Rosales's incentives to flee and her ability to repair the financial consequences of her flight with overseas funds renders any bond, even if co-signed, inadequate security. *See United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) (offer to post a substantial cash bond not adequate security against the risk of flight where the defendant has a strong motive to flee, has access to significant funds, and there is evidence of strong foreign family or business ties).

Electronic monitoring and/or home confinement are also insufficient because "home detention with electronic monitoring does not prevent flight; at best, it limits a fleeing defendant's head start." *United States v. Benatar*, No. 02-CR-99 (JG), 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002); *United States v. Conover*, No. 12-2080 (JS), 2012 WL 4846132, at *8 (D.N.J. Oct. 10, 2012) ("The proposed electronic monitoring is inadequate because it impedes, but does not prevent, defendant from fleeing."). Scores of defendants have been able to defeat electronic monitoring such as the defendant in *United States v. Garcia* who "broke his electronic monitoring bracelet and fled from justice for over fourteen years." *United States v. Garcia*, No. 11-237-cr, 2012 WL 499693,

---

[3] The Government reserves the right to request a hearing pursuant to *United States v. Nebbia*, 357 F.2d 303 (2d Cir. 1966), in order to inquire into the source of any cash or property posted as bail, if the Court decides that Rosales can be released on conditions.

The Honorable Sarah Netburn
May 21, 2013

at *1 (2d Cir.  Feb. 16, 2012) (summary order); *see United States v. Benatar*, No. 02-CR-99, 2002 WL 31410262, at *3 (E.D.N.Y. Oct. 10, 2002) (noting that monitoring equipment is easily rendered inoperative or becomes so by mechanical failure).  The risk of flight is real, as demonstrated by the attached list of defendants who have fled while on electronic monitoring through 2009.  (Ex. C, List of Defendants Who Have Fled While On Electronic Monitoring).  With Rosales, the risk that she would disable any monitoring device and seek to flee is especially great because she has the means to not only flee, but thrive overseas with her family and a generous bank account.

## The Information Provided to the Pretrial Services Office Supports Detention

The Pretrial Services report in this case (the "Report") strongly supports detention, not the very weak package of conditions proposed by the Pretrial Services Office.  In short, the defendant's choice to not provide various crucial information about herself, her financial circumstances, and her income supports the conclusion that she is a substantial flight risk.

First, the Report notes that the information in it "remains uncorroborated" because the defendant "stated that she did not want to provide a source for corroboration purposes."  This highly unique statement by the defendant makes it virtually impossible for the Pretrial Services Office to make an informed recommendation concerning bail.

Second, the Report notes that the defendant "did not want to answer questions concerning her income, nor questions regarding the collection of other means of income."  In light of the defendant's refusal to provide this information, it is simply impossible to assess whether a bail package has a meaningful effect in ensuring the defendant's future appearance before this Court.  At the very least, it appears that the defendant has the ability to satisfy her more than $15,000 of monthly obligations.  Yet, she has given no indication how she earns this money.

In this context, it is worth noting that, after her arrest, the defendant told her daughter, in substance and in part, to "remember what [Rosales] said about the money and the big bag."  This statement was made in Spanish and in the presence of a Spanish-speaking IRS agent.  Of course, the defendant did not disclose the existence of any cash to the Pretrial Services Office.

Third, the defendant denied the existence of assets (or liabilities) outside of the United States.  But the facts set forth in the Complaint belie the notion that the defendant has no assets outside of the United States, either held by her directly or held by the Boyfriend on her behalf.  As the Complaint makes clear, the defendant received more than $14 million of income in bank accounts in Spain over which she had control.  (*See* Compl. ¶¶ 12(a-d)).  The notion that those funds have nearly entirely been dissipated and that the defendant has nothing to show for this income beyond the approximate $1.8 million net worth reflected in the Report is, in a word, preposterous.

The Honorable Sarah Netburn
May 21, 2013

## Conclusion

For all of the foregoing reasons, the Government respectfully requests that Glafira Rosales be detained.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Jason P. Hernandez
Daniel W. Levy
Assistant United States Attorneys
(212) 637-1024/1062

Attach. (Ex. A-C)

cc:      Steven R Kartagener, Esq. (w/attach.)